*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1368**

State of Minnesota,
Respondent,

vs.

Javier Zapien-Arreola,
Appellant.

**Filed July 7, 2014
Affirmed in part and vacated in part
Schellhas, Judge**

Hennepin County District Court
File No. 27-CR-12-12801

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Elizabeth R. Johnston, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Sharon E. Jacks, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Peterson, Presiding Judge; Schellhas, Judge; and Connolly, Judge.

UNPUBLISHED OPINION

**SCHELLHAS**, Judge

Appellant challenges his criminal-sexual-conduct convictions, arguing that the district court erred by (1) not admitting prior-sexual-knowledge evidence and (2) and sentencing him for a lesser-included offense. We affirm in part and vacate in part.

## FACTS

Following the sexual assault of two sisters, M.M. and D.M., respondent State of Minnesota charged appellant Javier Zapien-Arreola with first-degree criminal sexual conduct under Minn. Stat. §§ 609.342, subd. 1(a), .101, subd. 2, .3455 (2010), against M.M. at age 7; second-degree criminal sexual conduct under Minn. Stat. §§ 609.343, subd. 1(h)(iii), .101, subd. 2, .3455, subds. 2–4, 6–7 (2010), against D.M. at age 12–14; and third-degree criminal sexual conduct under Minn. Stat. §§ 609.344, subd. 1(b), .101, subd. 2, .3455 (2010), against D.M. at age 14. Zapien-Arreola was the girls' grandmother's boyfriend and more than 40 years old.

Before trial, the district court addressed application of the rape-shield law to evidence related to M.M., noting that, off the record, Zapien-Arreola agreed that evidence of M.M.'s involvement in "a bus incident where a couple of juveniles abused [her]" would not be admitted at trial. On the record, Zapien-Arreola's counsel stated, "I have no intention [of] cross-examining [M.M.]" but moved the court for permission to cross-examine D.M. as to "any other prior sexual conduct." The court denied the motion under the rape-shield law. Zapien-Arreola did not argue that prior-sexual-conduct evidence was admissible as to either girl to show that she had prior sexual knowledge.

M.M., at age 8, testified that, when she was age 7, Zapien-Arreola kissed her mouth, placed his penis in her mouth, and placed his penis in her vagina. D.M. testified that, at ages 12 and 14, she participated in sexual activities with Zapien-Arreola in exchange for compensation. At age 12, she permitted him to suck her breasts in exchange for $20 and touch her vagina with his penis in exchange for $40. At age 14, she twice permitted him to have anal sex with her, first in exchange for a cell phone and second for $150. During the second incident, D.M. told Zapien-Arreola to stop because he was hurting her; he ignored her request. D.M. told her aunt about Zapien-Arreola's abuse, and M.M. told her mother about it. M.M.'s mother testified that M.M. told her that Zapien-Arreola "put his thing" in her mouth and "came some snot to [her]." The girls' mother and aunt contacted Minneapolis police, and D.M. met with Sergeant Olson and a nurse practitioner, who testified about D.M.'s report of Zapien-Arreola's abuse.

A CornerHouse forensic interviewer testified that, during her interview of M.M., she gave her anatomically correct male and female dolls to demonstrate what happened to her. M.M. demonstrated that the male grabbed her hand and placed it on his genitals, her mouth moved toward the male's genitals, and the male and female dolls' "private area[s]" touched each other. M.M. told the interviewer that Zapien-Arreola's semen tasted "like pee." The recorded interview was played for the jury. During the interview, M.M. stated that Zapien-Arreola made her touch and suck his penis or testicles and had sex with her by "put[ting] his private on [her] private."

Zapien-Arreola testified and denied any sexual conduct with M.M. and D.M. A jury found him guilty of first-, second-, and third-degree criminal sexual conduct. The district court sentenced Zapien-Arreola consecutively to 158 months' imprisonment for first-degree criminal sexual conduct and 99 months' imprisonment for second-degree criminal sexual conduct. The court sentenced Zapien-Arreola concurrently to 119 months' imprisonment for third-degree criminal sexual conduct.

This appeal follows.

## DECISION

### *Prior-Sexual-Knowledge Evidence*

"[E]videntiary rulings rest within the sound discretion of the trial court and will not be reversed absent a clear abuse of discretion." *State v. Griffin*, 834 N.W.2d 688, 693 (Minn. 2013) (quotation omitted). "On appeal, [Zapien-Arreola] has the burden of establishing that the court abused its discretion and that he was prejudiced by the evidentiary ruling." *Id.* A district court abuses its discretion when it acts "arbitrarily, capriciously, or contrary to legal usage." *State v. Profit*, 591 N.W.2d 451, 464 n.3 (Minn. 1999) (quotation omitted). "Even when a defendant alleges that his constitutional rights were violated, evidentiary questions are reviewed for abuse of discretion." *State v. Peterson*, 764 N.W.2d 816, 821 (Minn. 2009).

Admission of evidence of a victim's prior sexual conduct in a criminal-sexual-conduct case is governed by rule and statute. Under Minn. R. Evid. 412, commonly known as the rape-shield rule, evidence of prior sexual conduct of the victim "shall not be admitted nor shall any reference to such conduct be made in the presence of the jury,

except by court order under the procedure provided in rule 412." Minn. R. Evid. 412(1).

Under Minnesota's rape-shield law, Minn. Stat. § 609.347, subd. 3 (2010), evidence of a victim's prior sexual conduct shall not be admitted or referred to except by court order. The rape-shield law "is a legislative limitation of a citizen's Sixth Amendment right to confront and cross-examine opposing witnesses," *State v. Carroll*, 639 N.W.2d 623, 628 (Minn. App. 2002), *review denied* (Minn. May 15, 2002), and it renders inadmissible in criminal-sexual-conduct cases "evidence of the victim's previous sexual conduct," Minn. Stat. § 609.347, subd. 3, including "'allegations of sexual abuse,'" *State v. Kobow*, 466 N.W.2d 747, 750 (Minn. App. 1991), *review denied* (Minn. Apr. 18, 1991). In the event of conflict between the rule and law, the rule controls. Minn. Stat. § 480.0591, subd. 6 (2010) ("If a rule of evidence is promulgated which is in conflict with a statute, the statute shall thereafter be of no force and effect.").

The prior-sexual-conduct evidence as to M.M. pertained to two male classmates, one whom M.M. claimed did "the same thing" as Zapien-Arreola, repeatedly "made [her] suck," and twice touched the inside of her vagina, and she claimed that the other once grabbed her hand and made her touch "[h]is nuts" and once touched her vagina. As to D.M., the record discloses little about the evidence other than an offer of proof that D.M. was "alleged [to] have committed similar conduct" with two other adults, a family friend and a friend of a friend against whom no charges were brought by the state. Zapien-Arreola had no more information. In denying Zapien-Arreola's motion to cross-examine D.M. as to her prior allegations, the district court concluded that Zapien-Arreola provided insufficient information about the allegations.

On appeal, Zapien-Arreola concedes that the district court did not abuse its discretion by not admitting the prior-sexual-conduct evidence as to M.M. or D.M. under the rape-shield law but argues that the court plainly erred by not admitting the evidence because it "established an alternative source of [M.M.'s and D.M.'s] sexual knowledge" and was consequently admissible under his rights to confrontation and due process. Because Zapien-Arreola did not make this argument to the district court, the state argues that we should not consider Zapien-Arreola's argument. In our discretion, we will review the district court's exclusion of the evidence for plain error. Appellate courts "may consider an error not objected to at trial if there was (1) error, (2) the error was plain, and (3) the error affected the defendant's substantial rights." *State v. Tscheu*, 758 N.W.2d 849, 863 (Minn. 2008). If these three prongs are met, we assess whether we "'should address the error to ensure fairness and the integrity of the judicial proceedings.'" *Id.* (quoting *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998)).

"Despite the prohibition of a rape-shield law or rule, a trial court has discretion to admit evidence tending to establish a source of knowledge of or familiarity with sexual matters in circumstances where the jury otherwise would likely infer that the defendant was the source of the knowledge." *State v. Benedict*, 397 N.W.2d 337, 341 (Minn. 1986); *see State v. Friend*, 493 N.W.2d 540, 545 (Minn. 1992) ("In certain cases the due process clause, the right to confront accusers, or the right to present evidence will require admission of evidence otherwise excluded by the rape shield law."); *State v. Olsen*, 824 N.W.2d 334, 340 (Minn. App. 2012) ("[E]vidence [of a victim's prior sexual conduct] is . . . admissible 'in all cases in which admission is constitutionally required by the

6

defendant's right to due process, his right to confront his accusers, or his right to offer evidence in his own defense.'") (quoting *Benedict*, 397 N.W.2d at 341)), *review denied* (Minn. Feb. 27, 2013); Minn. R. Evid. 412 1989 comm. cmt. ("In *rare* cases, the due process clause, the right to confront accusers, or the right to present evidence will require admission of evidence not specifically described in Rule 412." (emphasis added)).

But, in *Benedict*, the Minnesota Supreme Court stated that, "as in ruling on the admission of other kinds of evidence, the trial court ought to balance the probative value of the evidence against its potential for causing unfair prejudice." 397 N.W.2d at 341; *accord* Minn. R. Evid. 403. In this case, the district court did not balance the probative value of the evidence against its potential for causing unfair prejudice and Zapien-Arreola did not offer the evidence for the purpose of establishing the girls' prior source of sexual knowledge. We conclude that, under the first prong of the plain-error analysis, the district court did not abuse its discretion by not admitting the evidence, even in light of Zapien-Arreola's constitutional rights to confrontation, due process, and evidence presentation.

Zapien-Arreola complains about M.M.'s negative response to the CornerHouse interviewer's question about whether any other person had ever done something that "wasn't okay with [M.M. or] made [her] uncomfortable or anything like that." But we are unpersuaded that one question in a voluminous record suggests that the jury likely inferred that M.M.'s and D.M.'s sexual knowledge arose solely from their contact with Zapien-Arreola and not from an alternate source. Zapien-Arreola also argues that the nurse practitioner's testimony implied that the source of D.M.'s knowledge or familiarity was Zapien-Arreola because the nurse practitioner noted D.M.'s description of his sexual

7

conduct with her and that D.M. "was able to provide sensory information." Zapien-Arreola's speculation is unpersuasive. *Cf. Olsen*, 824 N.W.2d at 341 (rejecting "purely speculative" theory).

Moreover, prior sexual-conduct evidence is "highly prejudicial," *id.* at 340, and "cannot withstand a rule 403 weighing unless special circumstances enhance its probative value," *State v. Crims*, 540 N.W.2d 860, 868 (Minn. App. 1995), *review denied* (Minn. Jan. 25, 1996).

> Such circumstances include situations in which the evidence explains a physical fact in issue at trial, suggests bias or ulterior motive, or establishes a pattern of behavior clearly similar to the conduct at issue. Unless and until a defendant shows the victim's sexual history to be relevant to the facts at bar, this particular form of character evidence simply is not admissible under the normal rules of evidence.

*Id.* (emphasis omitted) (citations omitted). Zapien-Arreola does not argue that any special circumstances exist here, nor does our review of the record show that they exist. He argues that the evidence was sufficiently probative as to D.M. because his defense was that "he did not commit the act and [D.M.] was not credible" but fails to explain how his claim of innocence and challenge to D.M.'s credibility are special circumstances that enhance the probative value of the evidence. As in *Crims*, "[a] careful review of the record shows no pattern of *clearly* similar behavior" by M.M. or D.M. *Id.* And Zapien-Arreola "enjoyed no constitutional right to [] admission [of the evidence] because the evidence's prejudicial effect outweighs its probative value." *Id.* at 868–69.

We conclude that the district court did not abuse its discretion by not admitting evidence of the alleged prior sexual conduct of M.M. or D.M. and therefore decline to

consider the remaining prongs of the plain-error test. *See State v. Hayes*, 826 N.W.2d 799, 808 (Minn. 2013) (declining to "consider the remaining prongs of the plain-error test" after concluding that "the district court did not abuse its discretion in admitting the challenged testimony").

## *Lesser-Included Offense*

Zapien-Arreola argues, and the state agrees, that the district court erred by entering judgment of conviction and sentencing him for his offense of third-degree criminal sexual conduct. Whether an offense is a lesser-included offense of another offense is a legal question that appellate courts review de novo. *State v. Cox*, 820 N.W.2d 540, 552 (Minn. 2012). "Upon prosecution for a crime, the actor may be convicted of either the crime charged or an included offense, but not both"; included offenses include "[a] lesser degree of the same crime." Minn. Stat. § 609.04, subd. 1(1) (2010).

We conclude that third-degree criminal sexual conduct is a lesser-included offense of second-degree criminal sexual conduct. We therefore vacate Zapien-Arreola's conviction of and sentence for third-degree criminal sexual conduct. *Cf. State v. Bertsch*, 707 N.W.2d 660, 666 (Minn. 2006) (vacating conviction and sentence for possession when it was an included offense of dissemination and arose from same behavioral incident as dissemination offense).

**Affirmed in part and vacated in part.**